[Cite as *State v. Simon*, 2013-Ohio-2067.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

       Plaintiff - Appellee

-vs-

SHANNA L. SIMON

       Defendant - Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2012CA00152

O P I N I O N

CHARACTER OF PROCEEDING:       Appeal from Court of Common Pleas,
Case No. 2012-CR-0491

JUDGMENT:       Affirmed

DATE OF JUDGMENT ENTRY:       May 20, 2013

APPEARANCES:

For Plaintiff - Appellee

JOHN D. FERRERO
Prosecuting Attorney

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
110 Central Plaza, South – Suite 510
Canton, OH  44702-1413

For Defendant - Appellant

KRISTINE W. BEARD
4450 Belden Village Street, N.W.,
Suite 703
Canton, OH  44718

*Baldwin, J.*

{¶1} Defendant-appellant Shanna L. Simon appeals her conviction and sentence from the Stark County Court of Common Pleas on one count each of aggravated vehicular assault, failure to stop after an accident, and operating a motor vehicle under the influence of alcohol, a drug of abuse, or a combination of them. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On May 21, 2012, the Stark County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1) and/ or (A)(2), a felony of the second degree, one count of aggravated vehicular assault in violation of R.C. 2903.08(A)(1), a felony of the third degree, one count of failure to stop after an accident in violation of R.C. 4549.02, a felony of the fifth degree, and one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. At her arraignment on May 25, 2012, appellant entered a plea of not guilty to the charges contained in the indictment.

{¶3} Subsequently, a jury trial commenced on June 26, 2012. The following testimony was adduced at trial.

{¶4} On March 22, 2012, Beau Landis, who had been dating appellant for about a week, met appellant at the Tremont Pub in Massillon. The two played pool with Mike Thatcher and had some beers and shots. According to Landis, appellant consumed alcohol during the time, but he was unable to say how much appellant had consumed. Landis testified that he bought appellant a Bud Light and a shot.

{¶5} During the evening, appellant got into a fight with Lionel Clark. Landis testified that he tried to get appellant to leave the bar because there were three other girls who wanted to confront appellant. Landis testified that appellant, Clark and the girls were all arguing while in the parking lot and that he was trying to get them to calm down. Landis managed to get appellant into her vehicle. He testified that after appellant got into her vehicle, Clark was trying to come over and talk to either appellant or to him and that, before he knew it, he was run over by appellant's car. As a result, Landis suffered from a fractured ankle, a fractured knee, a cracked pelvis, a dislocated lip, and other injuries. In all, he spent two weeks in an induced coma and three weeks in the hospital. After his release from the hospital, Landis entered a rehabilitation facility for approximately three and a half months.

{¶6} The next witness to testify at the trial was Sarah Seese, who was a bartender at the Tremont Pub who was familiar with appellant. Seese testified that, on the night in question, appellant ordered three White Russians which are made with vodka, Kahlua and half and half. Seese further testified that appellant and Lionel Clark were arguing back and forth and that Landis then grabbed appellant's arm and indicated that they should leave. On cross-examination, Seese testified that she did not see appellant consume the White Russians. She further admitted that she did not have a receipt indicating that appellant had ordered three of the drinks, although she testified that she had a good memory.

{¶7} At trial, Stephanie Gurule testified that she was at the Tremont Pub on March 22, 2012 at around 10:30 p.m. While Gurule was sitting at the bar, she saw Lionel Clark approach appellant about gossip. According to Gurule, appellant and Clark

were yelling at each other and then Landis, Clark and appellant were all yelling at each other while in the parking lot. Gurule testified that three other girls were also trying to confront appellant. Gurule also testified that she used her body to physically prevent the girls from becoming involved because the situation had nothing to do with them and that, once they backed off, she went over to Clark to get him to stop yelling and to get back to the bar. While Gurule was standing in the parking lot, appellant "cut" her wheel and ran over Landis who was close to appellant's car along with Gurule. The following testimony was adduced when Gurule was asked what happened to Landis: "When she cut it, when she cut the car to go in reverse, his legs went underneath of the front wheel, and when she backed up, his body flipped a couple of times. When she put it in drive and – to take off again, he was stuck under the wheel and she drug him about 15 feet until he hit a – till she hit a bump or pothole in the parking lot and it knocked his body loose. And she kept going." Transcript at 144-145.

{¶8} According to Gurule, everyone on the scene was screaming at appellant to stop the car, but appellant did not stop. She testified that appellant's windows were down. A videotape from the Tremont Pub was played for the jury.

{¶9} On cross-examination, Gurule testified that, prior to appellant and Clark getting into a yelling match with each other, the other three girls were picking fights with other people the whole two hours that Gurule was there. The three other women were screaming at appellant and intimidating her. Gurule testified that Clark approached appellant and that appellant did not go up to Clark looking for a fight. Gurule further testified that appellant was not arguing with Landis and did not seem mad at him. On

redirect, Gurule testified that appellant was yelling back at the three girls who were yelling at her.

{¶10} Officer Thomas Solinger of the Massillon Police Department testified that he investigated the incident that occurred at the Tremont Pub. As part of his investigation, Officer Solinger interviewed Lionel Clark who showed him some cell phone messages. Officer Solinger took photos of the messages, which were admitted into evidence. The Officer stated that he took photos of the messages after Clark indicated that he had been texting appellant. In one of the messages, appellant texted that she had not hit Landis, but had hit the "dumb bitch." Appellant admitted texting Clark after the incident, but said that she did not remember sending the message about the "dumb bitch."

{¶11} Officer Solinger testified that he spoke with appellant with her attorney present about a week later. He testified that he believed that appellant said that she had a couple of drinks that night, but he was not positive. Appellant also told him that she did not remember hitting anyone with her car.

{¶12} On cross-examination, Officer Solinger testified that appellant told him that she was afraid that she was going to be assaulted by the three females at the bar. He further testified that appellant told him that she had sped out of the parking lot at a high rate of speed.

{¶13} The next witness to testify at trial was Robert Jones who lived next door to the Tremont Pub. Jones testified that he heard commotion coming from the Tremont Pub on March 22, 2012. At some point, Jones saw appellant's car back up and knock Landis down and then run over him. Jones testified that he yelled along with everyone

else for appellant to stop, but that the vehicle dragged Landis through the gravel parking lot.

{¶14} Massillon Police Officer Shaun Dadisman was dispatched to the Tremont Pub on the night in question shortly after midnight.   When he arrived on the scene, he found Landis in poor condition. Officer Dadisman took statements from witnesses who had told him that appellant had hit Landis. The Officer then went back to the station to work on his report and, approximately 30 or 40 minutes later, received a call about another disturbance at the Tremont Pub. After determining that there was nothing going on at the Tremont Pub, Officer Dadisman and another officer went to the Tiki Bar where they found a vehicle matching the description of the vehicle that that had left the scene at the Tremont Pub. Appellant, who was located sitting at the bar, was arrested outside the bar. At the time, she had bloodshot eyes, she smelled of alcohol, she was very emotional and she was not walking normally. Appellant was taken to jail.

{¶15} While being booked at the jail, appellant was very emotional and was crying without tears and then not crying. Appellant stated that she had done nothing wrong. Officer Dadisman testified that he asked appellant to perform three field sobriety tests and that, based on her performance on the tests, he believed that appellant was impaired either by alcohol or some type of drug. He testified that he found a couple of pills in an unmarked pill bottle in appellant's purse. Appellant told the Officer that the pills were Xanax and that they were her grandmother's.

{¶16} On cross-examination, Officer Dadisman testified that the parking lot of the Tremont Pub was gravel and had dips and potholes. He testified that the incident took place shortly after midnight and that appellant was arrested at approximately 1:29

a.m. When asked why he did not take a blood, urine or breath sample from appellant, the Officer testified that that he made such decision along with his superior officer based on the lapse of time between the time appellant left the Tremont Pub and the time she was arrested. He admitted that he had no evidence that appellant was under the influence of alcohol or drugs when she was at the Tremont Pub. Officer Dadisman did not fill out an impaired driver's report. He further admitted that he did not know exactly what sort of pills appellant had on her because the pills were not tested. According to Officer Dadisman, appellant was shocked when told who she had run over.

{¶17} On redirect, Officer Dadisman testified that he did not interview either Sarah Seese or Beau Landis on the night at issue and that he did not have any information about appellant's consumption of alcohol when he had appellant at the jail.

{¶18} Susan Parnacott, who is Robert Jones' fiancée, testified that she heard the commotion outside the Tremont Pub and that, after seeing appellant hit Landis, she was screaming at appellant to stop. Parnacott further testified that while everyone was yelling at appellant to stop, she heard appellant scream from her car to "F off." Transcript at 266.

{¶19} After Parnacott testified, Michael Thatcher testified that he went to the Tremont Pub on March 22, 2012 to meet Landis and appellant. He testified that he saw appellant consume two beers and that appellant took a shot of Crown Royal whiskey from him and drank the same. He also saw appellant eat some blue pills.

{¶20} The final witness to testify at trial was Lionel Clark. Clark testified that he and appellant got into a verbal altercation and that appellant then left the bar. Clark testified that he then went into the parking lot because there was a lot of arguing going

on and other girls wanted to beat appellant up. According to Clark, he was attempting to calm everyone down. Clark testified that he walked over to appellant's car, where Landis was standing, and told appellant that she was wrong. Clark then went over to the fence line to talk to an acquaintance. Clark testified that he then saw appellant back up and run over Landis. Landis was not breathing, so Clark turned him over a bit and Landis coughed up blood and started breathing.

{¶21} Clark stated that he had talked to appellant many times on the phone and texted her. He testified that appellant texted him on March 222, 2012 while he was still standing in the parking lot of Tremont Pub. He then texted appellant to return to the Tremont Pub. On cross-examination, Clark testified that he went up to appellant and started talking to her and asking her questions about why she was disrespecting him. He testified that he went outside to the parking lot to stop the girls who wanted to beat appellant up. Clark further testified that he went up to appellant's car and apologized to Landis.

{¶22} At the conclusion of the evidence, the trial court granted appellant's Crim.R. 29 motion with respect to the charge of felonious assault. Thereafter, on June 27, 2012, the jury found appellant guilty of aggravated vehicular assault, failure to stop after an accident, and operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. Appellant was sentenced to an aggregate prison sentence of 12 months and was fined $1,000.00. In addition, appellant's driver's license was suspended for a period of three (3) years and appellant was ordered to pay restitution.

{¶23} Appellant now raises the following assignment of error on appeal:

{¶24} "APPELLANT'S CONVICTIONS FOR AGGRAVATED VEHICULAR ASSAULT, FAILURE TO STOP AFTER AN ACCIDENT AND OVI ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶25} Appellant, in her sole assignment of error, argues that her convictions for aggravated vehicular assault, failure to stop after an accident, and operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them are against the sufficiency and manifest weight of the evidence. We disagree.

{¶26} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶27} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶28} Appellant was convicted of aggravated vehicular assault in violation of R.C. 2903.08(A)(1) and operating a vehicle under the influence of alcohol, a drug of

abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a). R.C. 2903.08 states, in relevant part, as follows: "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways: (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;…" In turn, R.C. 4511.19 states, in pertinent part, as follows: "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them…"

{¶29}  Appellant also was convicted of failure to stop after an accident in violation of R.C. 4549.02.  Such section provides, in relevant part, as follows: "A) In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision."

{¶30} Appellant specifically contends that appellee failed to prove that she operated a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them at the time of the incident and that, therefore, the aggravated vehicular assault conviction must fail. Appellant further argues that appellee failed to prove that she knew or had reasonable cause to believe that she had been involved in a motor vehicle accident and that, therefore, the failure to stop after an accident conviction must also fail.

{¶31} As is stated above, there was testimony at trial that appellant had bought and consumed alcohol on the night in question. Beau Landis testified that he bought appellant a Bud Light and a shot and Sarah Seese testified that appellant ordered three White Russians. In addition, Michael Thatcher testified that he saw appellant consume two beers, that appellant took a shot of Crown Royal whiskey from him and drank the same and that he saw appellant eat some blue pills. As noted by appellee, appellant's actions in speedily backing up while people were near her car, and turning her wheel in such a manner so as to endanger people also indicated someone whose judgment was impaired by alcohol. Moreover, after striking Landis, appellant disregarded the many screams to stop and drove over Landis. Furthermore, when later at the police station, appellant exhibited signs of intoxication. In short, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant was under the influence of drugs and/or alcohol when she struck Landis. We further find that the jury did not lose its way in convicting her of the offenses of aggravated vehicular assault and operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them.

{¶32}  As is stated above, appellant also argues that appellee failed to prove that she knew or had reasonable cause to believe that she had been involved in a motor vehicle accident and that, therefore, the failure to stop after an accident conviction must also fail.  However, testimony was adduced at trial that Lionel Clark texted appellant and told her that she needed to return because the police were at the Tremont Pub.  Appellant did not do so. Rather, appellant texted back that she thought she had hit the "dumb bitch" instead of Landis.  Based on the foregoing, we find that any rational trier of fact could have found that appellant knew that she hit someone. We further find that the jury did not lose its way in convicting her of failure to stop.

{¶33}  Appellant's sole assignment of error is, therefore, overruled.

{¶34}  Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.


By: Baldwin, J.

Hoffman, P. J.  and

Wise, J. concur.


_____


_____


_____
                                          JUDGES


CRB/css

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                                    :
                                                 :
    Plaintiff - Appellee                     :
                                                 :
-vs-                                             :          JUDGMENT ENTRY
                                                 :
SHANNA L.SIMON                                   :
                                                 :
    Defendant - Appellant                    :          Case No. 2012CA00152

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____
                   JUDGES